Donahue, J.
The right of the plaintiff in error to recover upon the causes of action contained in its petition depends upon the validity of the ordinance passed by the council of the village of Pomeroy on the first day of March, 1915.
It is insisted that this ordinance is invalid because the village entirely failed and neglected to advertise for bids for public lighting pursuant to the provisions of Section 4221, General Code. If this section of the General Code applies to this ordinance, then it is necessarily void, and the plaintiff in error cannot recover.
In determining this question it is profitable at least to investigate the history of this legislation. Section 198 of the Municipal Code (96 O. L., 20, 83), passed October 22, 1902, provided that all contracts made by the council of any village shall be executed in the name of the village and signed on behalf of the village by the mayor, and clerk, and shall be made subject to the provisions of Sections 143 and 144 of the same act.
Sections 143 and 144 of the Municipal Code of 1902 conferred authority upon the directors of public service of a city to make contracts, purchase supplies or material, or provide labor for any work under the supervision of their department, not involving more than $500; and no contracts involving an expenditure in excess of that amount could be entered into by the directors of public service unless the same were authorized by ordinance of council, and in such case it was made the duty of the directors of public service to advertise and award the contract to the lowest and best bidder.
*79 Section 198 was evidently written into this Municipal Code to take the place of Section 1690 of the Revised Statutes, which section was repealed by the Municipal Code act. That section related exclusively to services performed and supplies furnished for the corporation, and provided that as far as practicable such service should be performed and furnished in pursuance of contract to be authorized by the council, through some proper officer or department of the corporation, except as otherwise provided.
The Codifying Commission wrote into Section 4221, General Code, all the provisions contained in Section 198 of the Municipal Code, except that portion thereof providing that contracts made under authority of that section “shall be made subject to the provisions of sections 143 and 144 of this act, so far as the same are applicable,” and in lieu thereof wrote into Section 4221, General Code, the parts of Sections 143 and 144 of the Municipal Code that it deemed applicable to villages.
It is therefore important in the construction of this language, written into Section 4221, General Code, by the Codifying Commission, to consider the same in connection with the statute in which it was originally written by the general assembly. (Ebersole v. Schiller, Admr., 50 Ohio St., 701.)
It is the settled rule of construction in this state, that, where the entire legislation affecting a particular subject-matter has undergone revision, the revised sections will be construed the same as the original sections, unless the language of the revision evidences an intention to change the mean *80 ing and intent of the original act. State v. Vanderbilt, 37 Ohio St., 590, 640; State, ex rel., v. Commissioners of Shelby County, 36 Ohio St., 326; State v. Jackson, Id., 281; Williams v. State, 35 Ohio St, 175; Reed v. Evans, 17 Ohio, 128, 134; City of Ironion v. Wiehle, 78 Ohio St., 41, 44, and Stevenson v. State, 70 Ohio St., 11, 15.
This ordinance does not involve the expenditure of any fixed amount, either more or less than $500. It contains no stipulation as to the amount of electric light the village will be required to- use in any month or any year. On the contrary, it merely provides that the village shall pay from month to month for the electric current that may be used to light the streets, alleys and public places, at the rate fixed by the ordinance. The plaintiff in error cannot charge more than this -ordinance rate, and having filed with the village clerk its acceptance in writing the village council cannot for a period of ten years require it to furnish electric light for less.
True, in the course of ten years the village will undoubtedly expend more than $500 for electric light, but that might be equally true of labor or material covered by a contract involving less than $500. While contracts for labor and material, the immediate use of which is in contemplation by the municipality, cannot be separated into several contracts in order to escape the provisions of Section 4221, General Code, neither is it necessary when such contracts are made to take into consideration the possible needs of the municipality for like services and material for the next ten years to *81 come. By a parity of reasoning, it would, appear equally unnecessary in a contract of this character to calculate the aggregate expenditures of the municipality for lighting its streets and alleys for ten years from and after the date of the ordinance. That could not be done if the electric light company had not filed an acceptance in writing, for the council in such event would have had the right to change the rate at will. The only effect of this acceptance in writing is to prevent the council from changing the rates for the next ten years. The ordinance in fact creates no liability. It merely fixes the rate to be paid from month to month for whatever current the municipality may use in lighting its streets and public places.
However that may be, there is a substantial difference between a contract for the furnishing of electric current, gas, or water, for a term of years, and a contract for the purchase of material to be delivered in gross, and a fixed amount paid therefor when delivered. Courts have had occasion to distinguish between such contracts, and it is unnecessary at this time to review these decisions. The rule, however, is well stated in 1 Dillon Municipal Corporations (5 ed.), 361, and discussed and applied by this court in the case of Logan Nat. Gas & Fuel Co. v. Chillicothe, 65 Ohio St., 186. It is also recognized by the general assembly of Ohio in the enactment of Section 3809, General Code.
This distinction must be borne in mind in determining the issue in this case.
*82 If Section 4221, General Code, applies to contracts of this character, then it applies to contracts for electric light made by every village in the state of Ohio, regardless of whether it has one or more electric light companies. As a matter of common knowledge the great majority of villages, in this state have but one source of supply. This of course must have been within the contemplation of the general assembly when it enacted this law. Advertisement, where there is but one source of supply, would be a foolish and absurd performance; and yet, if it must be done where there is more than one company, it must be done in every village of the state, though it have but a single company. The fact that in this particular village, and perhaps a few others, there may be two or more companies of this character, certainly would not induce the legislature to impose such a useless burden on the great majority of villages of the state not so fortunately situated.
If, however, there were doubt as. to the applicability or non-applicability of Section 4221, General Code, to the contract in question, that doubt is entirely removed by the special provisions in relation to gas, water, and electricity, found in Sections 3982, 3983 and 614-44, General Code.
Section 4221, General Code, contains general provisions relating to contracts to which the village is a party. The language is broad enough to comprehend within its terms all contracts; but it is also a settled rule of construction in this state that special provisions of one section, relating to a particular subject-matter, although apparently in con *83 flict with the general provisions of another section, must, nevertheless, be read as an exception thereto.
Section 3982 vests the council of a municipality in which electric lighting companies are established, or into which their wires, are conducted, with authority to regulate from time to time the price which such companies may charge for electric light for public or private consumption. This is a grant of legislative authority, and involves the exercise of the police power of the state.
The ordinance in question, while it purports to be contractual in its nature, is clearly an exercise of the legislative power conferred upon the council of a municipality by Section 3982, General Code.
Section 3983, General Code, provides that when the council of a municipality has fixed a price at which it will require a company to furnish electric light for public or private consumption, for a period not exceeding ten years, and the company or person so to furnish such electricity files a written acceptance in the office of the auditor or clerk of the corporation, the council shall not require such company to furnish electricity at a less price during the ten years covered by the ordinance. After the council of the village of Pomeroy had by this ordinance fixed the price that The Mutual Electric Light Company might charge for electric light furnished for public consumption, that company in pursuance of the provisions of Section 3983, General Code, filed with the village clerk its acceptance in writing.
It is therefore clear that both the village of Pomeroy and The Mutual Electric Light Company in *84 tended to act, and believed they were acting, under authority of these last two sections of the General Code.
It may be true that Section 3982, General Code, contemplates a general ordinance fixing prices to be charged by all electric lighting companies operating within the municipality, and that Sections 3809 and 3994, General Code, contemplate a later ordinance contracting with one of these companies at the price fixed by the rate ordinance. Yet there is no apparent reason why the village council cannot exercise its authority under these sections in the one ordinance. From the investigation we have been able to make it appears that this latter method is the one adopted by the majority of the villages of this state.
That question, however, is not now important. The village predicated its defense to this action solely on the ground that it did not advertise as required by Section 4221, General Code. It clearly appears from the provisions of Sections 3982 and 614-44, General Code, that the general assembly-intended to, and did, confer, absolutely, authority upon the council of a municipality to regulate from time to time the price that electric lighting companies, natural or artificial gas companies, gas light or coke companies, or companies for supplying water for public or private consumption, might charge for electric light or for gas for lighting, or fuel purposes, or for water for public or private consumption, furnished by such companies to the citizens, public grounds and buildings, streets, alleys, lanes, avenues, wharves or landing places, or *85 for fire protection; and this authority is limited only by the right of referendum, the right to appeal to the Utilities Commission, and by Sections 3983 and 614-44, General Code, which provide that where any such company files an acceptance of the rates in writing in the office of the auditor or clerk of the corporation the council shall not require such company to furnish its product at a less price during the ten-year period.
In the legislation creating and defining the power of the Utilities Commission of Ohio, the general assembly explicitly preserves to municipalities the power to fix rates under Sections 3982 and 3983, General Code, and also under Section 3644, General Code, relating to steam or hot water companies supplying power or heat to the municipality or its inhabitants.
Section 614-44, General Code, while preserving these sections, confers upon municipalities the same power and authority to fix rates, subject only to review by the Utilities Commission, when complaint is filed with it as provided in that section; not only that, but it refers to these contracts as contracts “entered into under the provisions of Sections 3644, 3982 and 3983 of the General Code.”
Section 614-14, General Code, which provides that “No public utility shall directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person, firm, or corporation, a greater or less compensation for any service's rendered, or to be rendered, except as provided in this *86 act,” must undoubtedly be read not only with Section 614-44, General Code, but also in connection with Section 3982, General Code, for that section is brought into the general rate-fixing plan and evidently made a part thereof by the provisions of Section 614-44, General Code.
If Section 4221, General Code, applies to a contract of this nature, the municipality would be required not only to advertise but to enter into a contract with the lowest and best bidder; although the price named in the lowest and best bid might be very much in excess of the price fixed by council.
Such a construction would render the provisions of Sections 3982, 614-44 and 614-47, General Code, absurd and meaningless, and enable public utilities to charge and collect whatever price they might choose to bid for the furnishing of electric light or other commodity to a municipality, in defiance not only of the ordinance fixing the rate but also of the express terms of these sections requiring such utilities to charge and collect no more and no less than the legal rate named in the ordinance.
On the other hand, if such ordinance is the valid exercise of police power by the legislative authority of a municipality, then there could be no purpose in advertising for bids; for in such case all bids must conform to the rate fixed in the ordinance.
From these considerations it is clear that Section 4221, General Code, applies only to contracts covering service, supplies, or such other things upon which the bidder has the right to fix the price for furnishing same. It can have no application whatever to contracts with public utilities named in Sec *87 tions 3982 and 3644, General Code, where the council of the municipality has the power and authority to fix the price of the service to be rendered or the commodity to be furnished.
The judgment of the court is'reversed, and, there being no material issue of fact joined by the pleadings, judgment is entered for plaintiff in error in accordance with the prayer of its petition.

Judgment reversed, and judgment for plaintiff in error.

Nichols, C. J., Newman, Jones and Matthias, JJ. concur.